# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **LEXINGTON LUMINANCE LLC** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No. 3:18-cv-1074-K |
| § | |
| **SERVICE LIGHTING AND** § | |
| **ELECTRICAL SUPPLIES, INC. d.b.a.** § | |
| **1000BULBS.COM** § | |
| § | |
| *Defendant*. | |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO STRIKE</u>**

1000Bulbs introduces new evidence and new arguments in its Reply brief (Dkt. 47) that were not responsive to Lexington's Response (Dkt. 42) to 1000Bulbs' Motion to Strike (Dkt. 38).  Lexington addresses 1000Bulbs' new arguments herein.

I.     LEXINGTON'S CONTENTIONS SATISFY THE RULES

   A.     The "active layer"

1000Bulbs' arguments are a good example of a patent infringer using local patent rules to needlessly litigate issues that would never otherwise be in dispute in this litigation.  As explained in Lexington's Response, and unrebutted in 1000Bulbs' Reply, the "active layer" is found in all LEDs contained in the Accused Products and is simply the portion of the LED that produces the light.  Resp. at 7.  There is no question that (1) the Accused Products are light bulbs, (2) the accused light bulbs use LEDs to produce light, and (3) in order to produce light, the LEDs must contain an active layer.  1000Bulbs does not argue that there is any question concerning whether the LEDs in the Accused Products contain an active layer.  1000Bulbs is simply not satisfied that Lexington has not identified the precise location of the active layer in each Accused Product through the use of costly reverse engineering microscopy.  1000Bulbs' arguments have nothing to do with the elements of any of the asserted claims.  The patent addresses "a solution to the lattice mismatch problem that uses a substrate with a 'textured district [that] comprises a plurality of smooth trenches without a prescribed angle of inclination.'"  Resp. at 5 citing *Lexington Luminance LLC v. Google, Inc*., No. 1:12-cv-12218-RGS, Dkt. 113, at *2 (D. Mass. Mar. 29, 2016).  Importantly, no claim element dictates a specific location for the active layer.

Nevertheless, Lexington *does* identify the location of the active layer in the Accused Products.  Resp. at 7-11.  Through the use of a journal article, including a detailed diagram, Lexington identifies the structure that Lexington contends satisfies the "active layer" claim element.  *See Rapid Completions LLC v. Baker Hughes Inc.*, 2016 WL 3407688, at *4 (E.D. Tex.

1

June 21, 2016) ("Where [the plaintiff] uses diagrams in its charts, the diagrams must include specific identification of each element of each asserted claim.") 1000Bulbs disagrees with Lexington's contention. 1000Bulbs argues that "the structure disclosed in Lexington's cited portion plainly does not apply to *all* LEDs." Reply at 4. The fact that 1000Bulbs may disagree with Lexington's contention as to the "active layer" location simply indicates that Lexington has set forth its contention with specificity sufficient for 1000Bulbs to understand it.

The degree to which the journal article applies to the Accused Products should not be a factor involving the sufficiency of Lexington's contentions. Lexington has explained its contentions, and 1000Bulbs is free to disagree with them. Nevertheless, prudence requires that Lexington address the mischaracterizations in 1000Bulbs Reply. In its Reply, 1000Bulbs alleges that "Lexington does not and cannot point to anywhere in the Infringement Contentions that adequately explains how the cited article relates to any of the accused products in this case." Resp. at 3. Not so. In fact, Lexington explained that the journal diagram refers to a "GaN-based LED" and depicts GaN (gallium nitride) layers deposed on a sapphire substrate. Resp. at 8, n. 10. Lexington's ICs explain that the LEDs used in the Accused Products use this GaN-on-sapphire configuration. *Id.*[1]

1000Bulbs makes the new argument in its Reply that the journal article does not apply to present-day LEDs because the article is dated 2002. Reply at 4. Again, Lexington cited the article and its diagram to explain its contentions, and 1000Bulbs is free to disagree with Lexington's contentions. All of 1000Bulbs arguments that Lexington should not be allowed

---

[1] 1000Bulbs alleges that Lexington made a "new" argument in its response by stating that the journal diagram applied to all LEDs. Reply at 4. Lexington should have added the qualifier "GaN on sapphire" LEDs. This should have been apparent from Lexington's Response. Resp. at 10 ("The cited journal article applies to "GaN-based devices [] grown on sapphire substrates.")

2

"rely on" the journal article are mis-guided. The article and the associated diagram simply explain Lexington's contentions, which are not evidence.[2]

### B. The "plurality of inclined lower portions" are "configured to guide extended lattice defects away from propagating into the active layer."

1000Bulbs also argues that the "plurality of inclined lower portions" and the "whereby" phrase are separate and distinct limitations. Reply at 6. However, under the language of the claim, the "configured to guide" term modifies the "inclined lower portions" structure. Thus, there is only one structure to identify, and Lexington has identified the structure. *See* Resp. at 12-13. Lexington contends that the inclined lower portions are shaped to reduce the propagation of extended lattice defects into the active layer.[3] Lexington is not required to explain the underlying theory behind the claimed reduction – that is properly the subject of expert testimony. Lexington clearly explained its contention that the claimed structure reduces the propagation of extended lattice defects into the active layer. There is nothing else to identify in Lexington's infringement contentions.

1000Bulbs reliance on *ZitoVault, LLC v. Int'l Bus. Machines Corp.* is misplaced. *See* Reply at 6. In *ZitoVault*, the plaintiff had attempted to accuse various cloud processing platforms of infringement through the platforms' execution of certain claimed functions. *See, e.g., ZitoVault*, No. 3:16-CV- 0962-M, 2018 WL 2971179, at *4 (N.D. Tex. Mar. 29, 2018)

---

[2] 1000Bulbs alleges that the statement that "P.R. 3-1 does not require the disclosure of evidence" is not attributable to *H-W Tech., L.C. v. Apple, Inc.*, No. 3:11-CV-651, 2012 WL 3650597 (N.D. Tex. Aug. 2, 2012). *See* Reply at 6 n.2. However, *H-W Tech.* cites *Balsam Coffee Solutions Inc. v. Folgers Coffee Co.*, 2009 WL 4906860, at *3 n.2 (E.D. Tex. Dec. 9, 2009) ("P.R. 3-1 **does not require the disclosure of evidence** and documents supporting infringement contentions.") (emphasis added). In any case, it is the law of this district. *Mobile Telecommunications Techs., LLC v. Blackberry Corp.*, No. 3:12-cv-1652-M, 2016 WL 2907735, at *3 (N.D. Tex. May 17, 2016) ("Infringement contentions need not disclose specific evidence").
[3] The parties have agreed that the phrase "whereby said plurality of inclined lower portions are configured to guide extended lattice defects away from propagating into the active layer" should be construed as "such that the inclined lower portions are shaped to reduce the propagation of extended lattice defects into the active layer." Dkt. 46 p. 3.

3

(Claim 5 states that "when the main server receives notification that an agent server is saturated, the main server finds an alternate agent server and passes the session key to the alternate agent server."). Thus, in *ZitoVault*, the plaintiff was expected to provide its contentions as to how particular software modules satisfied the elements of the asserted claims. *ZitoVault's* holding was more narrow than that suggested by 1000Bulbs:

> In its claim chart, Plaintiff must particularly point to the portion of the accused instrumentalities that perform the function described in each claim limitation. Plaintiff must delineate, to the extent possible, how the function is asserted to be performed by the accused instrumentalities and how that comports with each claim limitation. In particular, Plaintiff is directed to annotate or highlight the diagrams and images in its claim chart where elements of the asserted claims are found.

*ZitoVault*, No. 3:16-CV-0962-M at *8. Thus, *ZitoVault* found that, in the software context, the "structure" of the source code is not generally available to the plaintiff at the infringement contentions stage, so that the plaintiff is left with no choice except to explain how the claim limitations are met. In the present case, Lexington has unambiguously identified the structure. *See SSL Servs., LLC v. Cisco Sys., Inc.*, No 2:15-cv-433-JRG-RSP at *13 (E.D. Tex. Feb. 24, 2016) (finding that "[t]here is no ambiguity about which structures [Plaintiff] contends satisfy these claim elements" and finding that plaintiff's contentions comply with the disclosure requirements of Patent Local Rule 3-1.)

The other case cited by 1000Bulbs, *Shared Memory Graphics LLC v. Apple Inc.*, is also inapposite. *See* 812 F. Supp. 2d 1022, 1026 (N.D. Cal. 2010). In *Shared Memory*, the plaintiff did not provide contentions for the "whereby" clause. In the present case, Lexington provided its contention. Resp. at 12.

1000Bulbs also argues for the first time in its Reply that "Lexington cannot rely on its disclosure regarding one limitation to argue that it has sufficiently disclosed its infringement theory regarding another." Reply at 6. 1000Bulbs' argument, for which it provides no authority,

has been rejected by other courts. *See, e.g., SSL Servs.*, No 2:15-cv-433-JRG-RSP at *13 ("Whether the same structure can satisfy multiple limitations is a substantive legal issue— that Cisco can articulate its substantive disagreements with SSL's theory demonstrates that Cisco is on notice of SSL's theory 'beyond the mere language of the patent claim.' *Motion Games*, Dkt. No. 303 at 4. This is what the Local Rules require.")

### C. Lexington Need Not Perform Complete Teardowns on Every Accused Product

1000Bulbs cannot credibly argue that it is not on notice as to Lexington's basis for its use of representative products. Indeed, 1000Bulbs cannot credibly argue that Lexington's infringement theory would differ between any individual Accused Product.[4] What 1000Bulbs seeks is counter to the overarching principle to construe and administer the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. 1000Bulbs posits (for the first time in its Reply) that this district has not ruled on the issue of representative charting. Reply at 7. Not so. This district allows it. *ZitoVault*, No. 3:16-CV-0962-M at *6 ("Plaintiff need not unnecessarily duplicate its efforts and create two separate charts, as such repetition is inefficient and does not advance the notice function.") citing *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2010 WL 346218, at *3 (E.D. Tex. Jan. 21, 2010) (allowing a single claim chart to address multiple accused instrumentalities).

1000Bulbs mischaracterizes Lexington's basis for its use of representative products, stating that "[t]he only explanation Lexington has offered for its claim of representative products relates to the outside appearance and size of a chip". Reply at 8. Not so. "The conclusion that the same LED chip is used for both products is based upon the chip's electrode pattern and dimensional proportions." Resp. at 15 citing Dkt. 38-3, APP0878. Again, Lexington has clearly articulated its contention. That 1000Bulbs can articulate its substantive disagreements with

---

[4] Lexington raised this issue in its Response and in an Interrogatory Request. *See* Resp. at 14.

5

Lexington's theory demonstrates that 1000Bulbs is on notice of Lexington's theory.  *See SSL Servs.*, No 2:15-cv-433-JRG-RSP at *13.

### D. 1000Bulbs Has Not Been Prejudiced

1000Bulbs introduces new allegations of prejudice for the first time in its Reply. 1000Bulbs cannot credibly point to any aspect of Lexington's infringement contentions and explain why it has been prejudiced.  Indeed, as explained above, 1000Bulbs understands Lexington's infringement theories, but has chosen an inappropriate vehicle, a motion to strike, to disagree with them.  1000Bulbs' claims of prejudice are unfounded, non-specific, meritless, and should be accorded no weight.  Patent infringers often profess ignorance and confusion over patentee's infringement theories.  Courts have recognized that defendants who file motions involving infringement contentions routinely "claim[] [they were] left to guess what would be accused," and that such defendants "seek to use [their] own alleged lack of clarification to its advantage at this stage of the proceeding." *See, e.g., Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006); *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (rejecting arguments to compel amended contentions even though defendants claimed the missing information was "vital" and that plaintiff's contentions kept them "ignorant of the factual basis for [its] infringement accusations").

## II. CONCLUSION

1000bulbs has received the requisite notice of Lexington's infringement theories. Defendant's Motion should be dismissed in its entirety.

DATED: November 27, 2018                     Respectfully submitted,

/s/*Robert D. Katz*
Robert D. Katz
Texas Bar No. 24057936
KATZ PLLC
6060 N. Central Expressway, Suite 560
Dallas, TX 75206
214-865-8000
888-231-5775 (fax)
rkatz@katzfirm.com

**ATTORNEYS FOR PLAINTIFF
LEXINGTON LUMINANCE LLC**

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the above date.

/s/ *Robert D. Katz*
Robert D. Katz